**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| GERARD T. CARROLL, and : <br> DAPHNE P. CARROLL, : <br>  : <br> Plaintiffs, : <br>  : <br> v. : <br>  : <br> BANK OF AMERICA, N.A.; : <br> FEDERAL NATIONAL : <br> MORTGAGE ASSOCIATION; : <br> and MCCALLA RAYMER, LLC, : <br>  : <br> Defendants. : | CIVIL ACTION NO. <br> 1:12-CV-02506-RWS |

**ORDER**

This case comes before the Court on Defendants Bank of America, N.A. ("BANA") and Federal National Mortgage Association's ("Fannie Mae") (collectively, "Lender Defendants") Motion to Dismiss [8] and Defendant McCalla Raymer, LLC's ("McCalla Raymer") Motion to Dismiss [12]. After reviewing the record, the Court enters the following Order.

# Background[1]

## I.  Factual Background

This case arises out of the non-judicial foreclosure sale of real property formerly owned by Plaintiffs, located at 4305 Edgewater Drive NW, Kennesaw, GA 30144 ("Property").  (Compl., Dkt. [1-1] ¶ 1; Opp'n to Pls.' Mot. for TRO, Dkt. [4] ¶ 2.)  On or about February 18, 2003, Plaintiffs executed a promissory note ("Note") in favor of New South Federal Savings Bank ("New South Federal"), obtaining a loan in the principal amount of $200,000.00 ("Loan").  (Compl., Dkt. [1-1] ¶ 8.)  To secure the Loan, Plaintiffs executed a security deed in favor of New South Federal on the same date ("Security Deed").  (Id. ¶¶ 8-9.)  On February 26, 2003, the Security Deed was recorded at Deed Book 13693, Page 2577, in the Cobb County, Georgia real estate records.  (Id. ¶ 9.)

On January 5, 2004, New South Federal assigned "all its right, title, and interest in" the Security Deed to Countrywide Home Loans, Inc.  (Id. ¶ 10.)  The assignment was recorded at Deed Book 13910, Page 4639, in the Cobb County, Georgia real estate records.  (Id.)

---

[1] As the case is before the Court on two motions to dismiss, the Court accepts as true the facts alleged by Plaintiffs in the Complaint.  Cooper v. Pate, 378 U.S. 546, 546 (1964).

2

In 2009, Plaintiffs began experiencing financial hardship and made partial payments on their mortgage. (Id. ¶ 12.) On October 21, 2009, Plaintiffs filed business and personal bankruptcies. (Id. ¶ 13.) These bankruptcies were discharged in February 2010. (Id.)

In April 2010, Plaintiffs applied for a loan modification with BANA and CitiMortgage on their first and second mortgages. (Id. ¶ 15.) After submitting identical documentation to both banks, Plaintiffs "immediately received a loan modification from CitiMortgage that reduced the payment by approximately 45%." (Id. ¶ 16.) "[BANA] as servicer for Fannie Mae, on the other hand, place[d] Plaintiffs in a dual track modification process," that according to the Plaintiffs was an "intimidating nightmare that . . . resulted in pain, suffering, and emotional distress." (Id. ¶ 17.) In September 2010, BANA advised Plaintiffs that they were approved by the underwriting department for a loan modification. (Id. ¶ 18.) However, "Fannie Mae in turn denied the modification in mid-January stating Plaintiffs had excessive income." (Id. ¶ 19.) "The house was immediately set for a foreclosure sale date of March 2, 2011." (Id. ¶ 20.)

"Due to a pending foreclosure sale date and Plaintiff Ms. Carroll's recent breast cancer diagnosis and upcoming surgery," Plaintiffs immediately

3

submitted a second modification request. (Id. ¶ 21.) "Fannie Mae offered a trial assistance proposal dated February 24, 2011" that Plaintiffs received the Monday before the foreclosure sale. (Id. ¶ 22.) However, with Plaintiff Ms. Carroll's upcoming breast cancer surgery scheduled for February 25, 2011, "Plaintiffs filed a chapter 13 bankruptcy in an attempt to stop the foreclosure sale and comfortably proceed with the breast cancer surgery without the threat of losing their home." (Id. ¶¶ 23-24.)

Plaintiffs did not personally respond to Fannie Mae's trial assistance proposal, but instead "signed up with a local company that attempted to proceed with a modification on their behalf." (Id. ¶ 25.) The "local company" submitted new modification paperwork for Plaintiffs, and "were advised that the previous trial plan was still available" and that "the trial plan represented and [sic] approximate 7% adjustment in monthly payment." (Id. ¶ 26.) In addition, Fannie Mae advised Plaintiffs that no additional documentation was needed. (Id. ¶ 27.) However, on October 7, 2011, Plaintiffs "received a voicemail from a Fannie Mae representative that stated they were no longer eligible for a modification due to their failure to accept the earlier trial modification." (Id. ¶ 28.) "These actions aggravated Plaintiff Ms. Carroll's

4

breast cancer diagnosis and [Plaintiff] Mr. Carroll's open heart surgery proceedings." (Id. ¶ 36.)

On August 31, 2011, in anticipation of the foreclosure sale, "[D]efendants executed an assignment . . .on behalf of Countrywide Home Loans, Inc. Purporting [sic] to transfer the property from Countrywide to BAC Home Loans, also stating that the security deed and promissory note were sold and assigned as well." (Id. ¶ 37.) On December 23, 2011, Plaintiffs received a Notice of Foreclosure Sale from McCalla Raymer, BANA's legal counsel, stating that BANA was "the entity with the full authority to negotiate and modify the terms of their mortgage." (Id. ¶ 38.) Plaintiffs' Property was subsequently sold at a foreclosure sale on July 3, 2012. (Opp'n to Pls.' Mot. for TRO, Dkt. [4] ¶ 2.)

## II.   Procedural Background

On June 28, 2012, Plaintiffs filed this suit in the Superior Court of Fulton County, Georgia, challenging Defendants' right to foreclose on the Property and alleging the following causes of action: (1) wrongful foreclosure (Count One) (Compl., Dkt. [1-1] ¶¶ 45-48); (2) violation of the Fair Debt Collection Practices Act ("FDCPA") (Count Two) (id. ¶¶ 49-53); (3) declaratory judgment

(Count Three) (id. ¶¶ 54-58); (4) intentional infliction of emotional distress ("IIED") (Count Four) (id. ¶¶ 59-63); and (5) attorney's fees (id. ¶¶ 64-66).

Lender Defendants removed the case from Superior Court of Fulton County to this Court on January 19, 2012, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446.[2]  (Notice of Removal, Dkt. [1] at 1.)  Plaintiffs filed a Motion for Temporary Restraining Order and/or Preliminary Injunction [2] ("Motion for TRO") on July 19, 2012.  On July 26, 2012, Lender Defendants and McCalla Raymer filed separate motions to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6).  On August 14, 2012, Plaintiffs filed a Motion to Extend Time to File Response to Motions to Dismiss [16] ("Motion to Extend Time") and Motion to Remand to State Court [17] ("Motion to Remand").

By Order dated March 7, 2013, the Court denied as moot Plaintiffs' Motion for TRO [2], denied Plaintiffs' Motion to Remand [17], and granted Plaintiffs' Motion to Extend Time, giving Plaintiffs an additional fourteen days from the date of the Order to respond to Defendants' motions to dismiss.

---

[2] On July 19, 2012, Defendant McCalla Raymer filed its Consent to Removal (Dkt. [1-2]).

6

Plaintiffs filed a response to Defendants' motions on March 22, 2013. Lender Defendants' Motion to Dismiss [8] and McCalla Raymer's Motion to Dismiss [12-1] are now before the Court.

## Discussion

### I.   Legal Standard for a Motion to Dismiss

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a federal court is to accept as true "all facts set forth in the plaintiff's complaint." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted). The court must also draw all reasonable inferences in the light most favorable to the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (internal citations omitted); Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.

The United States Supreme Court has dispensed with the rule that a complaint may only be dismissed under Rule 12(b)(6) when "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

7

would entitle him to relief.'" Twombly, 127 U.S. at 561 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The Supreme Court has replaced that rule with the "plausibility standard," which requires factual allegations to "raise the right to relief above the speculative level." Id. at 556.  The plausibility standard "does not[, however,] impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." Id.

## II.     Lender Defendants' Motion to Dismiss [8] and Defendant McCalla Raymer's Motion to Dismiss [12]

As a threshold matter, the Court notes that the Complaint (Dkt. [1-1]) generally asserts causes of action against "Defendants" as a group and not against defendants as separate entities.  Because the allegations are the same against all Defendants, the Court considers jointly the motions to dismiss.

### A.     Wrongful Foreclosure (Count One)

In Count One of the Complaint, Plaintiffs raise a claim for wrongful foreclosure, alleging that Defendants "attempted to conduct foreclosure proceeding [sic] against [P]laintiffs on several occasions, in violation of Georgia law." (Compl., Dkt. [1-1] ¶ 46.)  Defendants move to dismiss this claim on grounds that (1) Plaintiffs have failed to allege a legal duty, a breach

8

of that legal duty, or causation, three essential elements of a wrongful foreclosure claim; and (2) Plaintiffs have not alleged sufficient facts to satisfy the pleading requirements of Rule 8, Twombly, and Iqbal.  (Lender Defendants' Mot. to Dismiss and Incorporated Mem. of Law ("Lender Defs.' Mot. to Dismiss"), Dkt. [8] at 13-15; Mem. of Law in Supp. of Def. McCalla Raymer's Mot. to Dismiss Pls.' Compl. ("Def. McCalla Raymer's Mem."), Dkt. [12-1] at 11-12.)

Under Georgia law, in order to establish a claim for wrongful foreclosure a plaintiff must demonstrate: (1) a legal duty owed to it by the foreclosing party; (2) a breach of that duty; (3) a causal connection between the breach of that duty and the injury it sustained; and (4) damages.  Heritage Creek Dev. Corp. V. Colonial Bank, 601 S.E.2d 842, 844 (Ga. Ct. App. 2004).  The Court agrees with Defendants that Plaintiffs have not adequately stated a claim for wrongful foreclosure.  First, Plaintiffs have not alleged a legal duty owed them by Defendants or cited any authority establishing such a duty.  Although Plaintiffs' response brief discusses breach of statutory and contractual duties, Plaintiffs' Complaint does not mention either duty.  (Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Pl.s' Opp."), Dkt. [25] at 8-11.)  Plaintiffs are

precluded from amending their pleading with new arguments advanced in their briefs. Without an alleged duty, Plaintiffs cannot show a breach.

Additionally, even if Plaintiffs had alleged these duties, Defendants correctly contend, Plaintiffs cannot show causation between Defendants' alleged acts and Plaintiffs' damages. Plaintiffs do not dispute that they were in default under their mortgage loan. Therefore, they cannot show that the alleged injury was attributable to Defendants' actions and not their own acts or omissions. See Heritage Creek Dev. Corp. v. Colonial Bank, 601 S.E.2d 842, 845 (Ga. Ct. App. 2004).[3]

Furthermore, the Complaint does not satisfy the basic notice-pleading requirements of Rule 8, Twombly, and Iqbal because it contains no factual allegations against any of the Defendants as to this claim. The Complaint contains only conclusory statements that Defendants attempted to conduct foreclosure proceedings in violation of Georgia law and acted with negligence or wantonness. Therefore, Plaintiffs' claim for wrongful foreclosure (Count One) is **DISMISSED**.

---

[3] Plaintiffs assert in their Complaint that Defendants are liable for punitive damages. However, other than Plaintiffs' conclusory statement that Defendants' actions were "wanton or intentional," they have alleged no facts to show that punitive damages should be awarded here.

10

Case 1:12-cv-02506-RWS   Document 26   Filed 03/28/13   Page 11 of 16

B.FDCPA (Count Two)

In Count Two, Plaintiffs claim that Defendant McCalla Raymer violated the FDCPA.[4] Plaintiffs assert that Defendant McCalla Raymer violated 15 U.S.C. § 1692(e) because they "falsely stated [BANA] as the creditor in its communication letters and notice of power of sale." (Compl., Dkt. [1-1] ¶¶ 51-52.) McCalla Raymer argues that Plaintiffs fail to state a claim under the FDCPA because McCalla Raymer does not qualify as a "debt collector" under the FDCPA. (Def. McCalla Raymer's Mem., Dkt. [12-1] at 16.)

The Court agrees that Plaintiffs have failed to state a claim for violation of the FDCPA. The FDCPA "applies only to debt collectors[5] and not to creditors or mortgage servicers." Humphrey v. Washington Mutual Bank, F.A., No. 1:06-CV-1367-JOF, 2007 WL 1630639, at *2 (N.D. Ga. June 1, 2007). "[E]nforcement of a security interest through the foreclosure process is not debt collection for purposes of the [FDCPA]," except for the purposes of 15 U.S.C.

---

[4] Plaintiffs do not assert in their Complaint that Lender Defendants violated the FDCPA.

[5] The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

11

§ 1692f(6).  See Warren v. Countrywide Home Loans, Inc., 342 Fed. App'x 458, 460 (11th Cir. 2009); Khadija v. Fannie Mae, No. 1:12-CV-02519-WSD-AJB, 2012 WL 6681736, at *7 (N.D. Ga. Nov. 30, 2012) ("Enforcement of a security interest through the foreclosure process does not violate the FDCPA unless § 1692f(6) applies.").  Plaintiffs' FDCPA claim against McCalla Raymer relies on § 1692e, not § 1692f(6),[6] and therefore, there is no basis for identifying McCalla Raymer as a "debt collector" under the Act.  Accordingly, Plaintiffs' FDCPA claim (Count Two) is **DISMISSED**.

    C.    IIED (Count Four)

Plaintiffs allege that "[t]he acts of Defendants . . . constitute an outrage and were intentional and reckless," and that these actions caused Plaintiffs to "suffer[] severe mental and emotional distress and other injuries as a consequence of said acts."  (Compl., Dkt [1-1] ¶¶ 60-62.)  Specifically, Plaintiffs contend that Defendants' "actions aggravated Plaintiff Ms. Carroll's breast cancer diagnosis and [Plaintiff] Mr. Carroll's open heart surgery proceedings."  (Id. ¶ 36.)  Defendants argue that Plaintiffs fail to satisfy the pleading standards established by Rule 8, Twombly, and Iqbal, and that

---

[6] Again, Plaintiffs attempt to raise new claims and theories in their response brief. In their brief they cite § 1692f(6), but the Complaint only references § 1692e.

12

initiating foreclosure proceedings does not rise to the level of outrageous conduct.  (See Lender Defs.' Mot. to Dismiss, Dkt. [8] at 27-29; Def. McCalla Raymer's Mem., Dkt. [12-1] at 17-20.)

The Court agrees with Defendants.  Under Georgia law, in order to prevail on an IIED claim, Plaintiffs must allege that the conduct was: "(1) intentional or reckless; (2) extreme and outrageous; and (3) the cause of severe emotional distress."  Wilcher v. Confederate Packaging, Inc., 651 S.E.2d 790, 792 (Ga. Ct. App. 2007).  While the Court acknowledges that Plaintiffs have recounted the substantial personal difficulties they were experiencing, they have failed to Plaintiffs set forth factual allegations of conduct by Defendants that would support their IIED claim.  Instead, they make conclusory statements reciting the elements of the cause of action.  (See Compl., Dkt. [1-1] ¶¶ 60-62.)  This does not satisfy the pleading requirements of Rule 8, Twombly, and Iqbal.  Accordingly, Plaintiffs' claim for IIED (Count Four) is **DISMISSED**.

### D.     Declaratory Judgment (Count Three)

Plaintiffs seek a declaratory judgment "preventing any foreclosure actions initiated by [BANA]" because, they allege, BANA is not entitled to foreclose on the Property.  (Compl., Dkt. [1-1] ¶¶ 55-56.)  They also seek a declaratory judgment removing "all fraudulent transfers from Plaintiffs' title."

13

(Id. ¶ 57.)  Defendants argue that there are no allegations in the Complaint to show an actual controversy (i.e., a right possessed by Plaintiff and violated by Defendants) between Plaintiffs and Defendants and therefore, declaratory relief is improper.  (Lender Def.s' Mot. to Dismiss, Dkt. [8] at 26; Def. McCalla Raymer's Mem., Dkt. [12-1] at 21.)

In light of the Court's finding that Plaintiffs have failed to state a claim upon which relief may be granted with regard to the foreclosure sale of the Property, Plaintiffs are not entitled to a declaratory judgment in their favor.  See O.C.G.A. § 9-4-2(a) (providing that declaratory judgment may be issued "[i]n cases of actual controversy"); see also Lubin v. Cincinatti Ins. Co., No. 1:09-CV-1156-RWS, 2009 WL 4641765, at *3 (N.D. Ga. Nov. 30, 2009) ("[T]o bring a declaratory judgment action an actual controversy must exist.  The issue is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.") (internal quotation marks and citations omitted).  Here, Plaintiffs simply have not alleged sufficient facts to show that a real legal controversy exists.

14

Further, as Lender Defendants note, Plaintiffs' request for a declaratory judgment appears to be based on events that have already occurred (the foreclosure sale and assignment of the Security Deed). (See Compl., Dkt. [1-1] ¶ 55; Lender Defendants' Mot. to Dismiss, Dkt. [8] at 26-27.) In Georgia, a claim for declaratory relief will only survive a motion to dismiss if facts are pled showing a necessity "for a determination of any dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some *future* act or conduct which is properly incident to his alleged rights and which *future* action, without such directions, might reasonably jeopardize his interest." Henderson v. Alverson, 123 S.E.2d 721, 721-22 (Ga. 1962) (emphasis added). Plaintiffs have failed to allege any future event that may jeopardize their rights or legal interests. Accordingly, Plaintiffs' claim for a declaratory judgment (Count Three) is **DISMISSED**.

E.    Attorney's Fees

Finally, Plaintiffs seek "an award of expenses of litigation, including attorney's and other professional fees." (Compl., Dkt. [1-1] ¶ 66.) Claims for attorney's fees are derivative of a claimant's substantive causes of action. J. Andrew Lunsford Properties, LLC v. Davis, 572 S.E.2d 682, 685 (Ga. Ct.

15

App. 2002). Because each of Plaintiffs' substantive causes of action fail, Plaintiffs' derivative claim for attorney's fees must be **DISMISSED**.

In sum, Plaintiffs have failed to state a plausible claim for relief against Defendants. Therefore, Lender Defendants' Motion to Dismiss [8] and McCalla Raymer's Motion to Dismiss [12] are due to be **GRANTED**.

## Conclusion

In accordance with the foregoing, Lender Defendants' Motion to Dismiss [8] and Defendant McCalla Raymer's Motion to Dismiss [12] are **GRANTED**, and Plaintiffs' Complaint [1-1] is hereby **DISMISSED, with prejudice**. The Clerk is directed to close the case.

**SO ORDERED**, this  28th  day of March, 2013.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE